UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Slumberland Franchising, Inc., a
Minnesota corporation; and
Slumberland, Inc., a Minnesota
corporation,

                    Plaintiffs,

v.

When Pigs Fly LLC, a Wisconsin
limited liability company, and Diane K.
Watson, individually,

                    Defendants.
_____

CASE TYPE: Contract Dispute

Civil Action No. 10-3847 MJD/JJK

**DEFENDANTS' AND ROBERT
BREMER'S MEMORANDUM
OF LAW IN SUPPORT OF
THEIR MOTION FOR
SANCTIONS**

## PROCEDURAL STATUS

Plaintiffs brought a Motion for Contempt and Sanctions ("Contempt Motion") against

Defendants and Robert Bremer ("Respondents").   Plaintiffs' Contempt Motion was to be

heard on February 25, 2011, but was rescheduled to April 1, 2011 at the request of

Respondents and by Order of the Court [Doc. #36].   At the request of Respondents', the

presiding Judge's scheduling clerk set Respondents' motion for sanction on for hearing to

coincide with Plaintiffs' Contempt Motion.

## INTRODUCTION

Respondents submit this Memorandum in support of their Motion for Sanctions against

Defendants and their attorneys for filing their Contempt Motion for an improper purpose, the

inclusion of allegations and factual contentions that lack evidentiary support, failing to make a

reasonable inquiry into the facts before filing their Motion for Contempt, and withholding

material evidence from the Court.

## STATEMENT OF FACTS

1. In addition to the facts provided below, for efficiency's sake, and to avoid duplication, Respondents may from time-to-time herein cite affidavit testimony and other documents already contained within the record in connection with the Contempt Motion and Respondents' materials submitted in opposition thereto.

2. The Court issued a judgment and a Temporary Restraining Order ("Order") against Defendants on September 17, 2011. Neither action was opposed by Defendants. Robert Bremer ("Bremer") was not a party in either action.

3. On January 12, 2011 Bremer's attorney, Thomas J. Okoneski ("Okoneski"), wrote to Kenneth R. Larson and Barbara J. Larson, both doing business as Larson Enterprises ("Larsons"), advising them that Bremer had claims against them for $95,000.00. (Aff. Okoneski ¶2).

4. On January 20, 2011 James Wahl, Esq. ("Wahl") called Okoneski to advise that he would be representing Larsons. (Aff. Okoneski ¶3).

5. Wahl and Attorney Leslie Witterschein ("Witterschein") are the attorneys of record in this action.

6. On information and belief and based upon statements by Wahl to Okoneski, the Larsons and their family members are heavily involved in the ownership and operation of Plaintiffs' in this case. (Aff. Okoneski ¶4).

7. Wahl's letter of response to Bremer's claims against Larsons, dated January 28, 2011, makes it clear that the Larsons, Plaintiffs in this action, Defendants in this action, and Bremer are inexorably connected, acutely aware of the claims each has against the other, and the status of the various legal proceedings associated therewith. (See,

2

Exhibit "A").

8. On January 31, 2011 Okoneski emailed Wahl to advise that he would soon be preparing a Complaint on behalf of Bremer and against the Larsons and asking if Wahl would accept service of same. (See, Exhibit "B").

9. During the first week of February of 2011, Keith Freeburg, the primary affiant in support of Plaintiffs' Contempt Motion ("Freeburg"), spoke to Michael Larson about Respondents' alleged contempt of the Order.   As a result of his conversations with Michael Larson, Freeburg provided to Plaintiffs' attorneys the information which forms the basis of the Contempt Motion. (Aff. Freeburg ¶9).

10. On February 9, 2011 Okoneski emailed Wahl to indicate that Okoneski had prepared the Summons and Complaint on behalf of Bremer and against Larsons and asking if Wahl would accept service on their behalf. Wahl responded that he would accept service. (See, Exhibit "C").

11. Plaintiffs filed their Contempt Motion on February 11, 2011.

## ARGUMENT

Federal courts generally have three sources of power from which to impose sanctions:

1. **Federal Rule of Civil Procedure 11**authorizes federal courts to issue sanctions against parties or their attorneys who file motions or other papers for an improper purpose or lack a required level of evidentiary support. The aim of Rule 11 is to deter frivolous filings and to "curb abuses of the judicial system". _Cooter & Gell v. Hartmarx Corp., 496 U.S. 384,_ 397 (1990).

2. **28 U.S.C. §1927** authorizes sanctions in the form of "excess costs, expense and attorneys fees" against any attorney who "multiplies the proceedings in any case

unreasonably and vexatiously."   *Oliveri v. Thompson*, 803 F.2d, 1265, 1276 (2d Cir.

1986); *see also, Dreilling v. Peugot Motors of America*, 768 F.2d1159, 1165 (10th Cir.

1985).

3.   The **Inherent Power of the Court** to impose sanctions" is not limited to what is

enumerated in statutes or in the rules of civil procedure."   *See* Danielle Kie Hart, *And

the chill goes on—Federal Civil Rights Plaintiffs Beware: Rule 11Vis-a-Vis 28 U.S.C.

§1927 and the Court's Inherent Power*, 37 Loy. L.A. L. Rev. 645 (2004).   Federal

Courts have the inherent power to punish persons who abuse the judicial process.

The inherent power of the court is an "implied power squeezed from the need to make

the courts function." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991) (quoting

*NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990)).


These sources of power to sanction overlap and are not necessarily mutually exclusive.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (finding that, despite Rule 11 and 28

U.S.C. §1927 being both potentially applicable, the court was not required to resort to using

them when the inherent power of the court was best suited to the facts).   Rule 11 and §1927

do not displace the court's inherent power, but instead they exist concurrently.   *Id.*at 46, 49

("The court's prior cases have indicated that the inherent power of a court can be invoked even

if procedural rules exist which sanction the same conduct").


Based upon the facts and argument to follow, Respondents will show that there are ample and

compelling reasons and authority for the court to sanction Plaintiffs and their attorneys for

their behavior in bringing the Contempt Motion.

## I.        Sanctions Pursuant to Fed. R. Civ. P. 11

Respondents are aware that Rule 11includes a safe harbor provision of a 21 day notice and

corresponding opportunity for withdrawal of a motion and other papers that might become the

subject for sanctions.   In this case, however, Plaintiffs' brought their Contempt Motion on 14

days' notice. Respondents and their attorney were forced to immediately start an investigation

into the facts, contact parties and witnesses, conduct legal research, begin drafting a

memorandum in opposition, and seek an extension of the motion hearing date.   This

immediate and expensive activity was necessary because Respondents could not be certain

they would receive an extension to reply. If no extension had been granted, Respondents

would have had a mere seven (7) days to reply. (Aff. Okoneski, ¶ 5).   To be fair, Plaintiffs'

did offer a few days grace for Respondents to respond, but only if the court would do likewise.

However, Plaintiffs also opposed an extension to the next available date on the courts' motion

calendar. (See, Witterschein letter Doc. #35).   Respondents have no way to find out if

Plaintiffs' filed the Contempt Motion upon a mere 14 days' notice and opposed a moderate

extension period to gain a strategic advantage, but regardless, there was no opportunity for

Respondents to give the 21 day notice and at the same time avoid the expense of diligently

defending themselves.


It would be inequitable and do nothing for deterrence if Plaintiffs' and their attorneys were

able to use the Rules to their advantage and bring a motion on 14 days' notice and thereby

escape sanctions that are normally only available after a 21 day notice and opportunity of

withdrawal.      Therefore, when the Rule 11 notice requirements are frustrated or made

untenable under the circumstances, the courts can and do award sanctions *sua sponte*.   The

courts are cautioned, however, that if they award sanctions in circumstances outside of the

Rule 11 notice period, due process can be a concern and sanctions "should not be assessed lightly or without fair notice and an opportunity for a hearing on the record". *Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 623 (8th Cir., 2004). *See also, Willhite v. Collins*, 459 F. 3d 459 866, 868 (8th Cir., 2006) (an attorney was ordered to show cause as to why he should not be sanctioned pursuant to Rule 11 or the court's inherent authority).   In this case there will be an opportunity for Plaintiffs' and their attorneys to respond and there will be a hearing.

Wahl and Witterschein are required by Rule 11 to sign the motion papers. Fed. R. Civ. P. 11(a).   The Supreme Court has noted "[t]he essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit.   A signature sends a message to the district court that this document is to be taken seriously." *Bus. Guides, Inc. v. Chromatic Communications Enters.*, 498 U.S. 533, 546 (1991).   As licensed attorneys, Wahl and Witterschein know that they and their clients are subject to scrutiny and possible sanctions by the court when they bring motions.

Rule 11 also authorizes the court to sanction parties that violate the rule or are responsible for the violation. Fed. R. Civ. P. 11(c).   It is important, in this case, that the court utilize a Rule 11 analysis in determining whether sanctions are warranted, because parties can be sanctioned under Rule 11and Plaintiffs are just as, or even more culpable of the violations described herein, than their attorneys.

Rule 11 enumerates standards to which the litigants and counsel must adhere when presenting materials to the court.   First, Rule 11(b)(1) requires that the papers not be presented for an improper purpose.   Prohibited improper purposes include, but are not limited to, harassment,

the needless increase in the cost of litigation, and punitive endeavors.   In this instance, Plaintiffs' brought their Contempt Motion and included Bremer, only after the Larsons became aware that Bremer had significant claims against them in an unrelated matter ($95,000.00) (the case was venued in state court, but Plaintiffs removed the case to Federal Court as Court File No. 11-590 and it is now assigned to the Hon. Michael J. Davis, the Judge who will hear the instant motions). Respondents argue extensively in their Memorandum in Opposition to the Contempt Motion, that Plaintiffs' claims regarding the contempt of Bremer are completely fabricated and that Plaintiffs' claim for $101,000 in compensable damages is not only unwarranted and unsupportable, but is [mis]calculated to be suspiciously a little more than Bremer's claims against the Larsons.   As a reminder, the Larsons are Slumberland for all practical purposes.   The frivolous nature and timing of the Contempt Motion and the similarity of claimed damages should lead a reasonable person to conclude that Plaintiffs' are attempting to punish, harass or cause expense to Bremer, are seeking an award of damages from Bremer to cover any award Bremer gains in his case against the Larsons, or both. Defendants and Bremer believe that the court should find that Plaintiffs' Contempt Motion was brought for improper purposes in violation of Rule 11.

Second, Rule 11(b) provides that before presenting a motion to the court, whether by signing, filing, or advocating it – an attorney certifies that to the best of the person's knowledge, information and belief, *formed after an inquiry reasonable under the circumstances (emphasis added),* that the material presented is not filed for an improper purpose and has the requisite *degree of evidentiary* (*emphasis added*) and legal support. <u>Fed. R. Civ. P 11(b)</u>. Plaintiffs did not make a reasonable inquiry and have no, or miniscule support in the evidence.

Plaintiffs and their attorneys had an easy and reasonable opportunity to make an inquiry into the facts before bringing their Contempt Motion, but chose or failed to do so.   On many levels Plaintiffs, Wahl, Witterschein, and even Plaintiffs' franchisee in Baraboo, WI, were all aware of Okoneski's representation of Defendants and Bremer. (Aff. Powell, ¶7.s, as to the franchisee). Counsel for Plaintiffs could and should have contacted Okoneski to inquire about the circumstances that Plaintiffs' franchisee in Baraboo, WI was reporting. (*see,* Aff. Freeburg, in general). Had Wahl or Witterschein done so, Okoneski could have contacted Defendants, Bremer, and Powell, just as he did in investigating the facts before preparing Defendants' and Bremer's memorandum in opposition to the Contempt Motion. Had Wahl and Witterschein made one telephone call to Okoneski, they would have learned two critical things: (1) that the single credit card receipt they hinge Plaintiffs' Contempt Motion upon was completely explainable, diminimus, not Defendants' or Bremer's fault, and that the credit card problem was solved months before the Contempt Motion was filed; and, even more importantly, (2) that Powell would deny and refute everything in Freeburg's affidavit attributed to him, except the single credit card receipt. (Aff. Powell, in general). (Respondents' Memorandum in Opposition to the Contempt Motion is replete with comparisons of Reynoso's statements that are uniformly the direct opposite of Powell's testimony and the court is referred to said document in its review). Respondents suggest to the court that in Plaintiffs' haste to file their Contempt Motion, it was easier, more compelling, more punitive, and more gratifying to proceed without making reasonable inquiry than to concern themselves with Rule 11.

As discussed earlier, Rule 11 also requires evidentiary support.   Everything about Plaintiffs' Contempt Motion involves Powell.   Nevertheless, Plaintiffs chose to base their Contempt

Motion solely upon the hearsay of Kristen Reynoso, as reported to Keith Freeburg. (*see,* Aff. Freeburg, in general). Plaintiffs' and/or their counsel could and should have contacted Powell to see if the evidence he could provide would directly support their intended Contempt Motion.   Powell had emailed Plaintiffs' franchisee (Aff. Powell, ¶'s 4 and 7.q), so Reynoso had Powell's email address.   Powell's telephone number appears prominently on his invoice from the "Furniture Store" (*see,* Aff. Powell, Exhibit "A").    Powell emailed a copy of his invoice to Plaintiffs' franchisee (Aff. Powell ¶ 4 and 7.q) and presumably Reynoso sent it to Plaintiffs, because it is attached to Freeburg's affidavit as Exhibit "1".   Okoneski was able to reach Powell with a single telephone call. (Aff. Okoneski, ¶ 9).   One might argue that Plaintiffs' and their counsel were either unwise or negligent in not contacting the source of all their claims against Respondents.   A more nefarious view would be that Plaintiffs' were pleased with the facts as reported by Reynoso or assisted in their manufacture.   Either way, the Contempt Motion is not supported with the degree of evidence required by Rule 11.

The degree of difference (for all practical purposes total) between Powell's statements and Reynoso's statements deserves some inquiry. It is hoped by Respondents that the court will feel the same concern and investigate this circumstance on its own volition. While we are on the subject of the court's inquiry, Respondents request that the court investigate why and how Powell's "Furniture Store" invoice contains the text shown on Exhibit "A" to Powell's affidavit, but is missing on Plaintiffs' Exhibit "1" to Freeburg's affidavit.   Respondents covered this subject in their Memorandum in Opposition to the Contempt Motion and refer the court to that discussion.   Powell is a disinterested affiant with first-hand knowledge and should be considered more reliable than someone associated with Plaintiffs or even Plaintiffs themselves.   The courts can and have proceeded on their own authority to discover perjury

9

and evidence withholding or tampering.   Hopefully, this is not the case here, but as the old saying goes: "[t]his one doesn't pass the smell test."

To summarize the Rule 11 discussion, Respondents assert that Plaintiff's and their counsel brought a motion for improper purposes, did not conduct a reasonable inquiry, failed to support their motion with believable evidence, all in violation of Rule 11.   The parties and their counsel are subject to sanctions in this case.   Also, the court should determine if further investigation into Reynoso's statements and the "blank" invoice is warranted.

## II.      Sanctions Pursuant to 28 U.S.C. § 1927

Another basis for sanctions lies in 28 U.S.C. §1927.   The statue authorizes sanctions in the form of "excess costs, expenses, and attorneys fees" against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously".   *Oliveri v. Thompson*, 803 F.2d 1265, 1276 (2d Cir. 1986) (internal citations omitted); *see also Dreiling v. Peugot Motors of America*, 768 F.2d1159, 1165 (10th Cir. 1985).   The Eighth Circuit courts have interpret § 1927 as authorizing sanctions when attorney conduct, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court". *Lee v. L.B. Sales Inc.*, 177 F.3d 714, 718 (8th Cir. 1999). In the Eight Circuit, malicious intent or bad purpose is not required to support sanctions.

Wahl and Witterschein have unreasonably multiplied the proceedings in this case by bringing a Contempt Motion that was not well grounded or supported by actual facts, supported only by hearsay, and with the hearsay being from clients' with an obvious axe to grind against Defendants and Bremer.   The effect of the Contempt Motion upon Respondents certainly

rises to the level of being vexatious.   Attorneys Wahl and Witterschein also proceeded in reckless disregard of their duties to the court by failing to verify with or even inquire of Okoneski or Powell as to what the actual facts were.   As mentioned earlier, a simple call or letter of inquiry would have disclosed facts that would give any responsible attorney pause in bringing a Contempt Motion.   The Contempt Motion came completely out of the blue.   The court should question the motivation of attorneys that make no attempt to bring alleged contemptuous behavior to the attention of Respondents' counsel, before embarking on a thinly supported Contempt Motion.   Even a simple and customary cease and desist letter would have triggered an investigation by Respondents' counsel and would have resulted in the exposure of facts that would lead Wahl and Witterschein to question their client's affidavit material.

Attorneys Wahl and Witterschein acted unreasonably and for vexatious purposes in adding another expensive chapter to this action.   They did so by recklessly or intentionally failing to provide any opportunity for Respondents to explain or make the kinds of inquiry that would be prudent before bringing a Contempt Motion seeking over $100,000.00 in sanctions. Wahl's and Witterschein's actions in this matter rise to the level of being subject to sanctions under 28 U.S.C. §1927.

### III.   The Inherent Power of the Court

The court has the inherent power to punish persons who abuse the judicial process. *See* ¶ 3 of Argument above.   The inherent power to sanction is broad. *Chambers v. NASCO, Inc., 501 U.S. 32, 46, 49 (1991) (quoting NASCO, Inc. v. Calcasieu Television & Radio, Inc., 894 F.2d*

*696, 702 (5th Cir. 1990)).*   The scope of the power reaches "any abuse" of the judicial

process.   *Id. at 44.*   This includes the authority to sanction for conduct which occurs outside

of the courtroom, and is not limited to attorneys or parties. *See id.* 46, 57 ("As long as a party

receives an appropriate hearing … the party may be sanctioned for abuses of process

occurring beyond the courtroom ….").   Courts also have broad discretion to determine the

appropriate sanction to be imposed. *See id.* at 44, 45.


Plaintiffs' and their counsel's behavior has been discussed at length above and Respondents

argue that the court should award sanctions against each of them.   Because the court has the

authority to look at matters outside of the parties, attorneys and the courtroom, it should give

serious consideration to discovering what involvement Reynoso, Freeburg and Michael

Larson had in the development of Plaintiffs' version of the facts, providing an inaccurate

exhibit, and the bringing of the Contempt Motion. (*See* Aff. Freeburg, in general); (Plaintiffs'

Memorandum in Support of Contempt); and (Defendants' and Bremer's Memorandum in

Opposition).


## IV.   <u>Amount of Sanction</u>

Respondents have incurred considerable attorney's fees in defending themselves from the

ill-advised Contempt Motion.   Prior to bringing their Contempt Motion, Plaintiffs' were well

aware that Defendants and Bremer lacked the financial resources to defend themselves. (Aff.

Okoneski, ¶ 7).   In fact, Respondents argue that the Contempt Motion was intended as a

"quick strike" tactic, which sought to gain a sanction award from persons who were likely to

be unable to properly defend themselves.

The affidavit of Respondents' attorney, attached hereto as Exhibit "E", includes an accounting of attorneys' fees incurred by Respondents in defending against Plaintiffs' Contempt Motion ans seeking sanctions.   Respondents request an award of sanctions in the amount of $15,286.88 to cover their expenses of defending the Contempt Motion and seeking sanctions. Further, that Respondents should recover additional fees incurred if they must respond to any reply by Plaintiffs' and for the time in attending the hearing.

In the event that the court elects to proceed *sua sponte* to investigate further into the conduct of those persons responsible for abusing the judicial process in this matter, Respondents request that the court preserve Respondents' ability to be reimbursed for their expenses and attorney fees in participating in any such inquiry.

## <u>CONCLUSION</u>

Based upon the facts and arguments contained herein, Respondents ask the court to find that Plaintiffs' brought their Contempt Motion for an improper purpose, without reasonable inquiry into the facts, without sufficient evidentiary support, and in reckless or intentional disregard of the effects of same upon Defendants' and Bremer, in particular.   Plaintiffs and their counsel should be sanctioned in the amount of $ 15,286.88, together with continuing expenses in connection with the motions herein.   The court should consider proceeding *sua sponte* to investigate the roles non-parties have played in misrepresenting or manufacturing the facts, circumstances, and evidence in furtherance of Plaintiffs' Contempt Motion.

Respectfully submitted,


Dated:   March 18, 2011.                    **OKONESKI LAW FIRM, LLC**

                                            *Thomas J. Okoneski*

                                            Thomas J. Okoneski (146791)
                                            PO Box 9069
                                            North St. Paul, MN   55109
                                            Tel:   (651) 260-3524
                                            okolaw@q.com

                                            *Attorney for Defendants and Robert W.*
                                            *Bremer*