UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Slumberland Franchising, Inc., a
Minnesota corporation; and
Slumberland, Inc., a Minnesota
corporation,

          Plaintiffs,

v.

When Pigs Fly LLC, a Wisconsin
limited liability company, and Diane K.
Watson, individually,

          Defendants.

_____

CASE TYPE:  Contract Dispute

Civil Action No. 10-3847 MJD/JJK

**MEMORANDUM OF LAW IN
RESPONSE TO DEFENDANTS' AND
BREMER'S MOTION FOR
SANCTIONS AND REPLY TO
DEFENDANTS' AND BREMER'S
RESPONSE TO PLAINTIFFS'
MOTION FOR CONTEMPT AND
MOTION FOR SANCTIONS**

TO: DEFENDANTS WHEN PIGS FLY LLC AND DIANE K. WATSON, AND ROBERT BREMER, BY AND THROUGH THEIR ATTORNEY THOMAS OKONESKI, OKONESKI LAW FIRM, BOX 9069, NORTH ST. PAUL, MN 55109

## PROCEDURAL STATUS

Plaintiffs Slumberland Franchising, Inc. ("SFI") and Slumberland, Inc. ("SI") (collectively "Plaintiffs") brought a motion for Default Judgment on January 7, 2011 (the "Slumberland Default Motion"), after Defendants When Pigs Fly, LLC ("WPF") and Diane Watson ("Watson") (collectively "Defendants") failed to answer Plaintiffs' Complaint served and filed in September 2010, despite repeated extensions of time to answer. When SFI and SI learned in early February that Defendants and a member of WPF, Robert Bremer, continued to use Slumberland's® Mark despite the September 17,

2010 Order of this Court, SFI and SI brought a Motion for Contempt and Sanctions on February 11, 2011 (the "Slumberland Contempt Motion").  The hearing was originally scheduled for February 25, 2011, but was moved to April 1, 2011 at the request of Defendants and Bremer.  Defendants and Bremer filed a Memorandum in Opposition to Slumberland's Contempt Motion on March 17, 2011.  In addition to their response to Slumberland's Contempt Motion, Defendants and Bremer brought a motion for sanctions pursuant to Rule 11 ("Defendants' Rule 11 Motion").  Defendants and Bremer never served Plaintiffs' counsel with notice advising them of what Defendants and Bremer perceived to be violations of Rule 11, nor did they provide Plaintiffs with 21 days to withdraw any claims potentially in violation of the Rule.  Plaintiffs request that Defendants' Rule 11 Motion be stricken because Defendants are in Default of Plaintiffs' Complaint, Defendants' and Bremer's counsel has not filed a Notice of Appearance, and Defendants failed to follow proper procedure with regards to bringing a motion for sanctions under Rule 11.

## INTRODUCTION

It is undisputed that Defendants and Bremer issued credit card receipts with Slumberland's® Mark on them from at least October 22 through November 11, 2010 in connection with the operation of a retail furniture store business in Boscobel, Wisconsin. Such actions are in direct contravention of the Temporary Restraining Order issued by this Court on September 17, 2011 [Doc. 14], which clearly and unambiguously prohibits WPF and Watson, and <u>their members, agents, employees and all other persons in concert or privity with them</u>, from directly or indirectly using the Slumberland® mark in

connection with the offer and sale of retail furniture and mattress store products and services among other things. It is also undisputed that Bremer is not only a member of WPF, but also directly involved with the operations of the Boscobel, Wisconsin business. (See Aff. Bremer, in general)

## ARGUMENT

**A.  SLUMBERLAND FRANCHISING, INC. AND SLUMBERLAND, INC. ARE ENTITLED TO A FINDING OF CONTEMPT AND SANCTIONS BASED ON THE UNDISPUTED EVIDENCE THAT DEFENDANTS AND BREMER USED SLUMBERLAND'S® MARK IN VIOLATION OF THE TEMPORARY RESTRAING ORDER.**

SFI and SI are entitled to a finding of contempt and sanctions, and to a denial of Defendants' Rule 11 Motion. The Court shall find a party is in contempt if three elements are found: (1) the order itself is clear and unambiguous; (2) the proof of non-compliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply. *Lexis-Nexis v. Beer*, 41 F. Supp.2d 950, 954-955 (D. Minn. 1999).

Defendants do not dispute the unambiguousness of the Court's Order. Accordingly, there is no dispute that the first prong of the test is met.

Further Defendants and Bremer do not dispute that they used the Slumberland® mark in connection with the operation of a retail furniture store in Boscobel, Wisconsin. Defendants, in their affidavits, submitted documents and made admissions of these facts, including the following:

> Powell Aff. ¶ 4 and Exhibit A – Copy of Nov. 6, 2010 credit card receipt bearing the name "Slumberland Furniture"

3

> Watson Aff. ¶ 20 – Admission of issuance of credit card receipts bearing the name "Slumberland Furniture"
>
> Bremer Aff. ¶¶ 18, 20 – Admission of issuance of credit card receipts bearing the name "Slumberland Furniture"
>
> Bremer Aff. ¶ 23 – Admission of wearing Slumberland apparel in connection with the operation of the Boscobel business

These documents and admissions leave no doubt as to Defendants' and Bremer's use of the Slumberland Furniture mark in connection with the operation of a retail furniture business after issuance of the Court's Order.

Defendants and Bremer argue that they diligently attempted in a reasonable manner to comply with the Order. Defendant's and Bremer's claims of diligence are disingenuous, at best. Defendants and Bremer submitted affidavit exhibits which demonstrate that the liquidation sale began on October 22, 2011. (See Aff. of Watson, Exh. A). Watson and Bremer state that they didn't notice until November 7 or 8, 2010, after least 17 days of operations of the Boscobel business, that the credit card receipts continued to read "Slumberland Furniture." (See Aff. of Watson, ¶ 18; Aff. of Bremer, ¶ 18). Watson then states that the request for change was not submitted to the credit card company until November 11, 2010  (See Aff. of Watson, Exh. D).

It is important for the Court to note that on Monday, September 21, 2010, following the Court's issuance of the TRO on September 17, 2010, Plaintiffs received information that Defendants were continuing to operate their Richland Center, Wisconsin furniture store. Plaintiffs gave written notice of this violation of the TRO to Defendants. (See Aff. of Wahl, ¶8). Plaintiffs received no response to this notice from Defendants.

4

Defendants have not stated in their responses to Plaintiffs' motions when it was that they actually ceased operating the furniture store in Richland Center.

Defendants' and Bremer's actions do not demonstrate the requisite diligence.  If in fact they had identified the problem with the receipts before the opening of the Boscobel business and made efforts to remove the Slumberland Furniture mark from their store issued credit card receipts, why did they not notice the problem until 17 days after operations began in Boscobel?  Watson has provided no evidence, other than her unsupported affidavit claims, that she contacted the credit card processing company prior to issuing any receipts.  Moreover, they have provided no evidence to this Court that there were only a few receipts issued with the Slumberland Furniture mark by affidavit or otherwise.

As Plaintiffs noted in their prior Memorandum, Courts have awarded attorneys' fees and other monetary sanctions for violations of a temporary restraining order.  *See Lexis-Nexis*, 41 F.Supp.2d at 955; *see also Shady Records, Inc. v. Source Enterprises, Inc.*, 71 U.S.P.Q.2d (BNA), 1348, 1349 (S.D.N.Y. 2004); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d. 1529, 1535-36 (11th Cir. 1986).  Such an award can be made whether or not the contempt is willful.  *Sizzler*, 793 F.2d at 1536.  In this case, an award of damages and attorneys' fees is warranted.  Otherwise Defendants and Bremer would profit from their continued violation of the Court's Order and their continued damage to Plaintiffs' goodwill.  Plaintiffs also estimated damages based on Plaintiffs' knowledge of the furniture business and a good faith estimate of Defendants' and Bremer's sales.

Based on the Defendants' and Bremer's responses, Plaintiffs request the Court to order that Defendants and Bremer provide documentation of when the violations ceased in Richland Center, as well as when violations began and ended in Boscobel, and award damages to Plaintiffs accordingly, in addition Plaintiffs' attorneys' fees for bringing this motion and responding to Defendants' motions.

**B.   DEFENDANTS AND BREMER ARE NOT ENTITLED TO RULE 11 SANCTIONS BECAUSE THEY ARE IN DEFAULT, DEFENDANTS' COUNSEL HAS NOT FILED A NOTICE OF APPEARANCE, THEY HAVE NOT COMPLIED WITH THE REQUIREMENTS TO BRING THE RULE 11 MOTION, AND PLAINTIFFS ENGAGED IN A REASONABLE INQUIRY INTO THE FACTS BEFORE BRINGING THE MOTION.**

Defendants are not entitled to Rule 11 sanctions because they are in default in this action.  Plaintiffs served their Complaint on Defendants on or about September 14, 2010.  Despite multiple extensions, Defendants never answered and their counsel never filed a Notice of Appearance.  Defendants are now in Default, and the time to respond to Plaintiffs' Motion for Default Judgment expired on March 11, 2011.  Accordingly, the Court cannot provide Defendants with any affirmative relief.

In addition, Defendants are not entitled to relief because they have failed to follow Rule 11 requirements.  In order to bring a motion, Defendants must first provide notice to Plaintiffs detailing the alleged offenses and allowing Plaintiffs' 21 days to correct any violations prior to filing the motion.  Fed. R. Civ. R. 11 (West 2011).  Defendants neither provided the notice required nor waited the required 21 days before bringing their Rule 11 Motion.  (See Aff. of Wahl, ¶ 3).

In their memorandum, Defendants argue that they do not have to follow the rules under Rule 11 because Plaintiffs only allowed Defendants and Bremer 14 days to respond to Plaintiffs'' Contempt Motion. Defendants' argument is without merit. Plaintiffs brought their Contempt Motion under Rule 65, for violation of the Temporary Restraining Order. Plaintiffs were not required to provide notice of the violation of the Order nor provide the 21 day "safe harbor" under Rule 65. Defendants are, however, required to comply with Rule 11 in bringing their Motion.

Defendants argue that they were unable to provide the 21 day "safe harbor" because they had only 14 days to respond to Plaintiffs' Contempt Motion. However, because the Court granted Defendants' request for an extension/continuance on February 18, 2011, Defendants had at least five weeks during which they could have complied with Rule 11 and still had their motion heard on April 1, 2011. Accordingly, pursuant to the mandates of Rule 11, Defendants' motion should be stricken.

Moreover, even if the Court were to entertain Defendants' and Bremer's Rule 11 Motion, they are not entitled to sanctions. The appellate courts have determined that, "whether a violation [of Rule 11] has occurred is a matter for the court to determine, and this determination involves a matter of judgment and degree." *O'Connell v. Champion Intern. Corp.*, 812 F.2d 393, 395 (8th Cir. 1987). The *O'Connell* court further found that imposing sanctions was a serious matter that should be approached with caution. *O'Connell*, 812 F.2d at 395, (affirming a decision not to impose sanctions despite the fact that the plaintiff's complaint violated the statute of limitations).

In the case at bar, Plaintiffs engaged in a proper inquiry.  There is no dispute that Defendants and Bremer violated the Court's Order not to use Slumberland's® Mark, and Plaintiffs provided that proof of those facts to the Court in connection with their Contempt Motion.  Moreover, Defendants admit in their papers that they repeatedly issued receipts bearing the Slumberland Mark over a minimum of a 17 day period.  Accordingly, Plaintiffs had a good faith and reasonable basis for their allegations that the Court's Order had been violated.

Defendants and Bremer point out discrepancies between Keith Freeburg's Affidavit and Mr. Powell's affidavit.  While it is true that there are differences, the essential facts relating to the Powell transaction are consistent in both, as shown in Powell's January 8, 2011 email to Kristen Reynoso.  (See, Aff. of Wahl ¶ 4 and Exhibit B).  In that email, Mr. Powell states that he is following up on a phone call he made to Ms. Reynoso regarding "the return of my replacement mirror from the closing of the Richland Center Slumberland," which confirms Plaintiffs' assertions that Mr. Powell believed that Defendants' and Bremer's sale was related to Slumberland.  (Id.)  Further, Mr. Powell states, "the man's first name that I bought the dresser from was Bob," and the credit card receipt attached to Mr. Powell's email is identical to the credit card receipt attached to the Freeburg Affidavit.  (Id.).  Accordingly, the statements in Freeburg's Affidavit concerning use of the Slumberland Furniture mark and Mr. Powell's understanding that the sale was related to Slumberland are consistent with Mr. Powell's own words.

Further, Plaintiffs and their counsel vehemently deny that they submitted false or incomplete documents to this Court. Attached to Mr. Wahl's Affidavit is an exact replica of the documents we received from our client regarding the invoice above the receipt. (See Aff. of Wahl, Exh. A). Upon investigation, Plaintiffs' and their counsel can only conclude that photocopying of the document made the printing disappear. (See Aff. of Wahl, ¶ 2). But more importantly, whatever was written on Mr. Powell's "Invoice" is irrelevant to the issue of violation of the Court's Order. At no time did Plaintiffs allege that the Invoice had Slumberland® Marks on it, just the credit card receipt. Notably, having the "new" store number on the invoice did not prevent Mr. Powell from contacting Slumberland for assistance in replacing the mirror when WPF and "Bob" failed to do so. Whether or not WPF issued invoices with the "new" store name and phone number did not negate their continued violation of the Temporary Restraining Order as evidenced by the credit card receipt.

Finally, based on Defendants' past history of ignoring notices from Slumberland and this Court's Order, Plaintiffs were reasonable in their inquiry into violation of the TRO. In July 2010, Plaintiffs sent Defendants an order notifying them of their defaults under the Franchise Agreement, which they ignored and failed to correct. (See Aff. of Wahl, ¶ 5, Exhibit C). When a notice of termination was sent to Defendants on August 26, 2010, they ignored this as well and continued operating their Richland Center business as a Slumberland® store despite termination of their rights to use the Slumberland® Marks. It was not until some time after Plaintiffs received the Temporary Restraining Order and gave notice to Defendants on September 21, 2010, specifically

9

advising that their operation of the Richland Center business as a furniture store violated that Order, that Defendants ceased such operations. (See Aff. of Wahl, ¶ 8, Exhibit E). On October 28, 2010, Plaintiffs' counsel sent an email regarding the Boscobel location and inquiring about the details of the operation to Mr. Okoneski (See Aff. of Wahl, ¶ 9, Exhibit F). On October 29, 2010, Mr. Okoneski sent a reply to Mr. Wahl stating that he had no knowledge of any operations by Defendants, despite that fact that Defendants had begun the Boscobel liquidation business on October 22, 2010. Mr. Okoneski's email goes on to accuse Plaintiffs of coercing furniture manufacturers and/or distributors not to deal with Defendants, and warning of the seriousness of business torts. In light of that admonition, it would have been improper (as well as unnecessary) for Plaintiffs to have contacted Defendants' customer, Mr. Powell. The documents he provided established the essential facts of a violation of the Court's Order and Mr. Bremer's direct involvement in those violations. Had Plaintiffs or their counsel contacted Mr. Powell or any other customer of Defendants, Defendants would undoubtedly have complained of tortious interference with contractual relations or other business torts.

Plaintiffs do not dispute that Mr. Powell's statements in his Affidavit differ from Mr. Freeburg's Affidavit, but also point out to the Court that a number of statements in Mr. Powell's Affidavit are contradictory to his January 8, 2011 email to Ms. Reynoso. What is established by all of the submissions to the Court is the fact that Defendants and Bremer used the Slumberland Furniture mark in connection with the operation of a retail furniture business after the Court's TRO had been issued. Accordingly, under these circumstances, Plaintiffs' and their counsels' inquiry into the material facts relating to

10

Plaintiffs' Contempt Motion was reasonable and Defendants' Rule 11 Motion should therefore be denied.

## CONCLUSION

Based on the undisputed evidence that Defendants violated the Temporary Restraining Order, Plaintiffs request that the Court find Defendants and Bremer to be in Contempt of the Temporary Restraining Order, and order sanctions in an amount to be determined appropriate by the Court, together with Plaintiffs' attorneys' fees.  In addition, Plaintiffs respectfully request that the Court strike or dismiss Defendants' Motion for Sanctions.

Dated this 28th day of March, 2011.

**MONROE MOXNESS BERG PA**

s/James Wahl
James Wahl (ID #170501)
Leslie Witterschein (ID #261592)
8000 Norman Center Drive, Suite 1000
Bloomington, MN  55437-1178
Telephone: (952) 885-5999
Attorneys for Plaintiffs

MMB: 4825-6352-7689, v.  1